UNITED STATES DISTRICT COURT – EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| Plaintiffs,<br>Richard F. Baldwin, and<br>Corporacion El Moscardon, S.A.,<br>Versus<br>Defendants,<br><br>Silvio Lacayo Beeche, Mauricio Lacayo<br>Beeche, Manfred Lacayo Beeche,<br>Financiera Desyfin, S.A., Inversiones<br>Basicas,S.A. Inversiones Activas Siglo<br>XXI, S.A., Asesorias Capitalistas<br>Fresh, S.A., Sociedad Administradora de<br>Acciones Cosi, S.A. and Does 1 through 5 | § § § § § § § § § § § § § | Civil Action: _1:18cv602_____ |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTIES, CIVIL CONSPIRACY, FRAUD, VIOLATIONS OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1961, THE TRAVEL ACT 18 U.S.C. § 1952, THE FOREIGN CORRUPT PRACTICES ACT, THE ANTI-WIRETAPPING & HACKING ACT 18 U.S.C. § 1030, THE COMPUTER FRAUD & ABUSE ACT 18 U.S.C. § 1030, AND FOR DISGORGEMENT OF ILLICIT EARNINGS, PROFITS AND ASSETS IN THE UNITED STATES AND REPUBLIC OF COSTA RICA**

NOW INTO COURT, through undersigned counsel, come:

## I. PARTIES

1. Plaintiff, Richard F. Baldwin, is an individual of the age of majority and a citizen of the State of Texas residing within the Eastern District of Texas, who at all relevant times was and is a shareholder and Director of Corporacion El Moscardon, S.A.

2. Plaintiff, Corporacion El Moscardon, S.A., which is a corporation organized and existing under the laws of the Republic of Costa Rica (hereinafter "Moscardon"), which has offices in and regularly transacts business in the Eastern District of Texas.

1

3. Defendant, Silvio Lacayo Beeche, is an individual and a citizen of the country of Costa Rica who regularly visits the United States of America and the States of Texas and Florida, upon information and belief owns property located in the United States of America, who personally, or on behalf of one of more Defendants transacts business in the United States of America, has directed communications, into the State of Texas and the United States of America, who at all relevant times was and remains a shareholder, President and Director of Corporacion Financiera Desyfin, S.A., and upon information and belief is a shareholder and Secretary of Inversiones Basicas,S.A., President and controlling shareholder of Inversiones Activas Siglo XXI, S.A., a shareholder or officer of Asesorias Capitalistas Fresh, S.A., and a shareholder and Treasurer of Sociedad Administradora de Acciones Cosi, S.A..

4. Defendant, Mauricio Lacayo Beeche, is an individual and a citizen of the country of Costa Rica who regularly visits the United States of America and the States of Texas and Florida, owns property located in the United States of America, who personally, or on behalf of one of more Defendants transacts business in the United States of America, has directed communications, into the State of Texas and the United States of America, who at all relevant times was and remains a shareholder and Director of Corporacion Financiera Desyfin, S.A., and upon information and belief is a shareholder or officer of Inversiones Basicas,S.A., of Inversiones Activas Siglo XXI, S.A., is a shareholder and the "Fiscal" of Asesorias Capitalistas Fresh, S.A., and is the President and controlling shareholder of Sociedad Administradora de Acciones Cosi, S.A..

5.     Defendant, Manfred Lacayo Beeche, is an individual and a citizen of the Republic of Costa Rica who regularly visits the United States of America and the States of Texas and Florida, owns property located in the United States of America, who personally, or on behalf of one of more Defendants transacts business in the United States of America, has directed and caused the delivery of international postal mail, email, telefaxes, telephone calls, and other communications into the State of Texas and the United States of America, who at all relevant times was and remains a shareholder, Treasurer and a Director of Corporacion Financiera Desyfin, S.A., and upon information and belief is a shareholder and Treasurer of Inversiones Basicas,S.A. a shareholder and Secretary of Inversiones Activas Siglo XXI, S.A., is President and the controlling shareholder of Asesorias Capitalistas Fresh, S.A., and a shareholder and Secretary of Sociedad Administradora de Acciones Cosi, S.A..

6.     Defendant, Financiera Desyfin, S.A. is a corporation organized and existing under the laws of the Republic of Costa Rica. Defendant has its principal place of business in the Republic of Costa Rica. Defendant has regularly transacted corporation business in the Eastern District of Texas.  Multiple officers, Directors, agents and attorneys of Defendant Desyfin, S.A. have regularly and routinely traveled to and personally transacted Desyfin, S.A. business in the Eastern District of Texas as well as other portions of Texas.  Defendant by multiple officers and Directors, has additionally directed and caused the delivery of international postal mail, couriers, email, telefaxes, telephone calls, and other communications into the State of Texas and the United States of America, but which does not have a registered agent for service of process in the State of Texas. Service of process on Defendant may be made according to the Hague Convention or alternatively upon the Embassy of the Republic of Costa Rica in

Washington, D.C. by serving the official(s) designated therein who can waive compliance with the Hague Convention and who as an official act will cause service to be effectuated and made upon the Defendant in the Republic of Costa Rica.

7. Defendant, Inversiones Basicas, S.A. is a corporation organized and existing under the laws of the Republic of Costa Rica. Defendant has its principal place of business in the Republic of Costa Rica. Defendant has directed and caused the delivery of international postal mail, couriers, email, telefaxes, telephone calls, and other communications into the State of Texas and the United States of America, but which does not have a registered agent for service of process in the State of Texas. Service of process on Defendant may be made according to the Hague Convention or alternatively upon the Embassy of the Republic of Costa Rica in Washington, D.C. by serving the official(s) designated therein who can waive compliance with the Hague Convention and who as an official act will cause service to be effectuated and made upon the Defendant in the Republic of Costa Rica.

8. Defendant, Inversiones Activas Siglo XXI, S.A. is a corporation organized and existing under the laws of the Republic of Costa Rica and functionally the "alter ego" of Silvio Lacayo Beeche. Defendant has its principal place of business in the Republic of Costa Rica. Defendant has directed and caused the delivery of international postal mail, couriers, email, telefaxes, telephone calls, and other communications into the State of Texas and the United States of America, but which does not have a registered agent for service of process in the State of Texas. Service of process on Defendant may be made according to the Hague Convention or alternatively upon the Embassy of the Republic of Costa Rica in Washington, D.C. by serving the official(s)

designated therein who can waive compliance with the Hague Convention and who as an official act will cause service to be effectuated and made upon the Defendant in the Republic of Costa Rica.

9. Defendant, Asesorias Capitalistas Fresh, S.A. is a corporation organized and existing under the laws of the Republic of Costa Rica and functionally the "alter ego" of Manfred Lacayo Beeche. Defendant has its principal place of business in the Republic of Costa Rica. Defendant has directed and caused the delivery of international postal mail, couriers, email, telefaxes, telephone calls, and other communications into the State of Texas and the United States of America, but which does not have a registered agent for service of process in the State of Texas. Service of process on Defendant may be made according to the Hague Convention or alternatively upon the Embassy of the Republic of Costa Rica in Washington, D.C. by serving the official(s) designated therein who can waive compliance with the Hague Convention and who as an official act will cause service to be effectuated and made upon the Defendant in the Republic of Costa

10. Defendant, Sociedad Administradora de Acciones Cosi, S.A. is a corporation organized and existing under the laws of the Republic of Costa Rica and functionally the "alter ego" of Mauricio Lacayo Beeche. Defendant has its principal place of business in the Republic of Costa Rica. Defendant has directed and caused the delivery of international postal mail, courier, email, telefaxes, telephone calls, and other communications into the State of Texas and the United States of America, but which does not have a registered agent for service of process in the State of Texas. Service of process on Defendant may be made according to the Hague Convention or alternatively upon the Embassy of the Republic of Costa Rica in Washington, D.C. by serving the official(s)

designated therein who can waive compliance with the Hague Convention and who as an official act will cause service to be effectuated and made upon the Defendant in the Republic of Costa Rica.

11.   Defendant, Lacayo Beeche Family, is an unincorporated association of the above listed individual Defendants and Does 1 through 5 constituting a Racketeering Enterprise who have individually, or in concert, violated the Foreign Corrupt Practices Act, 15 U.S.C.§ 78dd-1 by aiding, encouraging or participating or benefiting from the bribery of officials of subdivisions of the government of the Republic of Costa Rica in road construction projects, as well as construction projects of non-governmental entities, and which have engaged in "Money Laundering" to conceal and distribute improperly obtained money and funds, and who have traveled to the United States of America, the Republic of Costa Rica and other foreign countries in violation of the Travel Act, 18 USC § 1952 in order to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity as part of the Lacayo Beeche Racketeering Enterprise, and who may be served as stated above.

## II. JURISDICTION

12.   The Court has jurisdiction over the lawsuit under 18 U.S.C. § 1961 and the Travel Act, 18 U.S.C. § 1952, a predicate RICO offense.

13.   The Court also has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(2) because the suit is between citizens of the United States and citizens and corporations of a foreign state who are not lawfully admitted permanent residents of the United States domiciled in the State of Texas and the amounts in controversy exceed $ 75,000.00 excluding interest and costs.

14. Defendants engaged in activities purposefully directed into the State of Texas, specifically into the Eastern District of Texas. Multiple officers, Directors, agents and attorneys of Defendant, Desyfin, S.A. have regularly and routinely traveled to and personally transacted Desyfin, S.A. business in the Eastern District of Texas as well as other portions of Texas and have further employed the facilities of international and interstate commerce in their illegal activities. Defendants have additionally regularly transacted business in New York, New York to access United States Financial markets and Washington, D.C. to obtain and access funds through instrumentalities of the United States government.

15. On October 4, 2018 Plaintiffs computer systems located in the Eastern District of Texas were subjected to a deliberate and sustained "hacking" attack during which event files and data of the Plaintiffs regarding their disputes with Defendants and Plaintiffs information concerning Defendants international business activities were attacked. Plaintiffs notified the United States Federal Bureau of Investigation Cyber Task Force. The Federal Bureau of Investigation Cyber Task Force has been provided access to Plaintiffs' original computer systems and the "backups" containing Plaintiffs information regarding the Defendants improper and illegal activities. Upon information and belief, Defendants, or certain of them, were the orchestrators of the cyber attack and hacking attempts carried out in the Eastern District of Texas upon Plaintiffs in violation of the Anti-Wiretap & Electronic Communication Act, 18 U.S.C. § 2511 and the

### III. VENUE

13. Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions and activities of the Defendants giving rise to the claims asserted herein occurred in this District or were purposefully directed into this District.

### IV. CONDITIONS PRECEDENT

14. All conditions precedent have been performed or have occurred as required by the parties agreements.

### V. FACTS

15. On October 6, 2003, Plaintiffs and Defendants executed a written contract regarding certain obligations, duties and rights established between and among them.

16. The contract provided that Plaintiffs would invest certain sums of money for the conduct of specified legal and proper activities and Defendants would conduct and operate the business activities in a defined legitimate manner as specified below.

### VI. BREACH OF CONTRACT AND FIDUCIARY DUTIES

17. Plaintiffs, and each of them, have performed all of their duties and obligations under the parties' agreements.

18. Defendants have not performed multiple and numerous fiduciary and contractual obligations as officers and Directors of Desyfin, S.A.. Specifically, defendants have not faithfully honored and discharged their duties as officers and

directors of Desyfin, S.A.. Instead, Defendants have for their own benefit diverted corporate assets and numerous business opportunities to themselves and particularly to businesses and persons conspiring and acting in concert with them. Defendants have repeatedly shifted expenses away from entities they control without Plaintiffs having any interest into Desyfin, S.A. thereby artificially inflating Desyfin, S.A.'s costs, reducing its profits and simultaneously increasing their personal and controlled business entities profits. The Defendants have violated multiple provisions of the laws of the United States of America and the Republic of Costa Rica as more fully delineated stated below. Defendants' actions, malfeasance and nonperformance constitute a breach of their fiduciary duties and the parties' contracts.

## VII. CIVIL CONSPIRACY

19. The parties agreements contain the following provisions guaranteeing specific rights to Plaintiffs and impose various obligations on the Defendants, and upon each of them, which individually, or in concert they have failed and refused to honor or comply with to their direct and indirect benefit, to wit Defendants have denied Plaintiffs their right to exercise their Preemptive Rights as articulated below, despite allowing favored investors and shareholders, such as NORFUND to exercise the same rights.

> 6. **Preemptive Rights.** The Corporation and Inversiones Basicas S.A.,Inversiones Activas Siglo XXI S.A., Asesorias Capitalistas Fresh S.A., Sociedad Administradora de Acciones Cosi SA., hereby grants to Moscardon the right to purchase on a pro rata basis in accordance with such Shareholders shareholdings, New Securities (as defined herein) which the Corporation, from time to time, proposes to sell and issue (the "Preemptive Right"). The Shareholder's pro rata share, for purposes hereof, is the ratio of the number of Shares which the Shareholder owns or has been given the right to acquire from the Corporation to the total number of Shares of stock of each and every class of shares then outstanding (and which would be issued pursuant to any right that all Shareholders have to receive additional shares). This

obligation is also recognized by the Shareholders and each Shareholder agrees to uphold such obligation in favor of the other.

6.1 "New Securities" shall mean any capital stock of the Corporation whether now authorized or not, and rights, options or warrants to purchase capital stock, and securities of any type whatsoever that are, or may become convertible into or exchangeable for capital stock, issued on or after the date hereof. The term "New Securities" shall not mean (i) common stock issued as a stock dividend to a Shareholder or issued upon any stock split, subdivision or combination of shares, (ii) shares of capital stock issued in connection with and as consideration for an acquisition of another entity or their assets; and (iii) shares of capital stock issued in a qualified public offering.

6.2 In the event the Corporation has authorized an issuance of New Securities, it shall give each Shareholder written notice, describing the type of New Securities and the price and the terms upon which the Corporation proposes to issue the same. The Shareholder shall have ten (10) days from the date of receipt of any such notice to agree to purchase up to the Shareholder's _pro rata_ share of such New Securities (and such additional amount of New Securities that are available in the event any Shareholder elects to acquire less than their full share of the New Securities) for the price and upon the terms specified in the notice by giving written notice to the Corporation and stating therein the quantity of New Securities to be purchased.

6.3 In the event any Shareholder fails to exercise in full such Shareholder's purchase right, the Corporation shall have sixty (60) days thereafter to sell to any third party the New Securities with respect to which such Shareholder's option was not exercised, at a price and upon terms no more favorable to that specified in the Corporation's notice. To the extent the Corporation does not sell all the New Securities offered within said sixty (60) day period, the Corporation shall not thereafter issue or sell such New Securities without first again offering such securities to the Shareholder in accordance with the provisions of this Section.

**Change of Control.** For the purpose of this Agreement, Control shall mean, in relation to the Corporation i) any company or corporation or group of individuals which directly or indirectly holds a majority of the voting rights in it; ii) is a member of it and has the right to appoint or to remove a majority of its board of directors or other supervisory body; or iii) is a member of it and controls alone, pursuant to an agreement with other shareholders or members, a majority of the voting rights in it.

7.1 Currently the Lacayo family is in Control of the Corporation. For the purpose of this Agreement, the Lacayo family is understood to include

10

Mr. Silvio Lacayo **L.**, Ms. Hortensia Beeche **M., Mr.** Silvio Lacayo **B.**, Mr. Mauricio Lacayo B., Mr. Manfred Lacayo B., directly or indirectly, through Inversiones Basicas S.A. Inversiones Activas Siglo XXI S.A., Asesorias Capitalistas Fresh S.A., Sociedad Administradora de Acciones Cosi S.A., or any other national or foreign entity in which they directly or indirectly retain Control.

7.2 As long as the Lacayo family continues to maintain Control of this Corporation, this Agreement shall remain in place. However, as soon as such Control is directly or indirectly, through any agreement or otherwise, transferred in any way to any third party or entity other than the Lacayo family in which the Lacayo family does not exercise Control or the Lacayo family approves a merger involving the Company, a sale of all or a portion of the outstanding stock in the Company or a sale of all or substantially all of the assets of the Company (the "Transaction"), then:

7.2.1 <u>Drag Along.</u> Upon notice to the Shareholders informing of the Transaction ("Notice of the Proposed Transaction"), Moscardon shall have the right, which must be exercised within ten (10) days of the receipt of the Notice of Proposed Transaction, to require the Lacayo family and or Inversiones Basicas S.A. Inversiones Activas Siglo XXI S.A., Asesorias Capitalistas Fresh S.A., Sociedad Administradora de Acciones Cosi S.A. ("Notifying Shareholder") to require the Bona Fide Offeror to also purchase the Shares of Moscardon, at the same price per Share and on the same terms as the Bona Fide Offeror has offered and/or agreed to purchase the Shares of the Notifying Shareholder.

## VIII. THE LACAYA BEECHE RICO ENTERPRISE

20. A RICO enterprise "includes **any** individual, partnership, corporation, association, or other legal entity, and any union or group of individuals **associated in fact although not a legal entity**". 18 U.S.C. § 1961(4) (emphasis added). This enumeration of included enterprises is "obviously broad". *Boyle v. United States*, 556 U.S. 938, 944 (2009). "The term 'any' ensures that the definition has a wide reach, and the very concept of an association in fact is expansive." *Id.* (citation omitted). "**There is no restriction upon the associations embraced by the definition:** an enterprise includes any union or group of

individuals associated in fact." *United States v. Turkette*, 452 U.S. 576, 580 (1981)

21. Plaintiffs have stated facts demonstrating the association-in-fact Lacayo Beeche RICO enterprise is an informal group which functions with a common purpose. Defendants are employed by or associated with the Enterprise within the meaning of 18 U.S.C. § 1961(4), consisting of the listed Defendant members of the Lacayo Beeche family and the business enterprises and activities they directly and indirectly control via the respective boards of directors of those entities (the "Enterprise") and the additional hundreds of businesses they influence or control as more particularly stated below.

22. The members of the Lacayo Beeche RICO enterprise are and have been associated-in-fact through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, which each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Those objectives would be beyond the capacity of any single member of the Enterprise acting singly without the aid of the other members. Defendants are each associated with the Enterprise, and have held themselves out to be associated-in-fact, despite their separate purported legal status. The Defendants, their boards of directors and unknown persons listed as Does 1 through 5 are a "continuing unit that functions with a common purpose" to constitute a RICO enterprise.

23. The broad RICO guidelines and the fact that the terms of the RICO statute must be "liberally construed to effectuate its remedial purposes" make it especially applicable to the Lacayo Beeche enterprise. The RICO law is particularly appropriate to obtain relief from Defendants diversion and use of resources and assets properly belonging to the Plaintiffs for illegal purposes as alleged above.

24. Plaintiffs allege and have evidence showing that the Enterprise existed prior to this litigation. The Enterprise remains in effect, as evidenced by Defendants ongoing

activity in Costa Rica, the United States of America, Central America, Western Europe and elsewhere. Defendants have a continuing presence in the Costa Rican financial industry, and will continue to borrow money in the United States of America and Western Europe to pursue other domestic and international projects in the future consistent with the purpose of the Enterprise. Plaintiffs have a reasonable basis for believing that the Lacayo Beeche RICO Enterprise will continue to use illegal and improper means and methods of making money contrary to the laws of the United States and the Republic of Costa Rica.

25. The Enterprise comprised of Defendants, their directors and the Lacayo Beeche group is an entity separate and distinct from each of the Defendants, as is the association and informal "Enterprise" consisting of a combination of all those entities. Defendants are legally different individuals and business entities distinct from the enterprise each with different rights and responsibilities due to their differing legal status.

26. Defendants have engaged in a "pattern of racketeering activity" the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The Lacayo Beeche activities of racketeering activity embrace prohibited conduct for the same or similar purposes, results, participants and victims.

27. A causal nexus exists between Defendants racketeering activities and Plaintiffs' Damages. Defendants used the mail and wires of interstate and international commerce to conduct and carry out their illegal actions. Defendants and their agents traveled internationally and interstate to defraud Plaintiffs enabling the Defendants to obtain and use private and proprietary information to compete with and divert business from Plaintiffs and obtain U.S. Government financing.

## IX. CAUSES OF ACTION

### A. Civil Conspiracy

28. Plaintiffs reassert and reallege the facts stated in Paragraphs 1 through 26 above, in particular that Defendants have for their own benefit diverted corporate assets and numerous business opportunities to themselves and particularly to businesses and persons conspiring and acting in concert with them. Defendants have repeatedly shifted expenses away from entities they control without Plaintiffs having any rights or interest into Desyfin, S.A. Defendants thereby artificially inflate Desyfin, S.A.'s costs, reducing its profits and simultaneously increasing their personal wealth and assets and those of their associated or controlled business entities profits.

29. The asserted facts demonstrate Defendants engaged in a civil conspiracy to accomplish illegal and unlawful purposes. Defendants knowingly, intentionally, and maliciously conspired to engage in predatory business practices; tortuously divert business opportunities properly belonging to Desyfin, S.A. and defraud Plaintiffs with the apparent design and intent of taking Plaintiffs investments and driving them out of Desyfin, S.A. and other businesses.

30. The effect of the conspiracy has led to Plaintiffs suffering extensive injury and damages as a proximate result of the wrongful acts. Plaintiffs seek the recovery of all actual and consequential damages and exemplary damages as allowed by the federal laws and treaties of the United States and the laws of the state of Texas.

### B. Violations of Federal Law

31. Defendants have traveled and/or used the mail in interstate and foreign commerce with the intent to promote, manage, establish, carry on and/or facilitate bribery

of government and private officials in violation of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1, and other United States laws. Defendants have each made use of the mails and other instrumentalities of international and interstate commerce in furtherance of offering, paying and authorizing payment of money and other items of value to foreign officials for the purposes of influencing acts and decisions of such foreign officials in their official capacity, inducing such foreign officials to act or omit action in violation of their lawful duties, and securing improper advantage. These acts constitute a pattern or practice of racketeering activity in violation of 18 U.S.C. § 1962(c).

32. Defendants have further participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of mail and wire fraud. Defendants used the mail, private commercial carriers and/or wires on multiple occasions within the past ten (10) years while executing that scheme. Specifically, Defendants transmitted documents and other information via mail, email, fax and/or telephone, both among each other and to and from Plaintiffs, transmit drafts and final versions of a multiplicity of Defendants business documents. Those acts constitute a pattern or practice of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

33. In addition and/or in the alternative, Defendants have conspired to violate 18 U.S.C. § 1962(c). Defendants agreed to participate in the affairs of the Enterprise, to commit mail and wire fraud, and to commit bribery in violation of the Travel Act, Foreign Corrupt Practices Act and other United States laws. Defendants each knew of and agreed to the overall objectives of the predicate RICO offenses and performed overt acts in furtherance of the racketeering activity.

### C. RICO Disgorgement

33. The remedies for violations of the FCPA include disgorgement, which is the preferred remedy and frequently used by the Securities and Exchange Commission and the Department of Justice as a means of enforcement of the FCPA in cases where profits were obtained through violations, such as bribery. Defendants must be required to forfeit, with interest, the approximate amount earned from the unlawful activity. Disgorgement is regularly used as an alternative to assessing punitive measures against companies violating the FCPA, and supplements criminal monetary penalties or civil damages awards.

34. Plaintiffs specifically pleads disgorgement of all profits and revenues of Defendants as an independent claim and cause of action to properly compensate Plaintiffs and effectuate the international public policy encompassed in the above referenced Treaties and laws of the United States, the Republic of Costa Rica, which was articulated in above sections as a proper and appropriate measure of damages.

### D. Violations of Texas Law

35. Defendants and each of them personally conducted or directed actions against the Plaintiffs in and into the State of Texas in a manner constituting a breach of contract, breach of their fiduciary duties to plaintiffs, a civil conspiracy and intentional torts rendering them jointly and severally liable for actual and punitive damages.

### IX. INTEREST

36. Plaintiffs are entitled to be fully compensated for their losses and federal, Texas and international law requires awards of interest to restore Plaintiffs to a reasonable approximation of the position in which they would have been but for Defendants illegal activities. Economic reality requires Plaintiffs recover and should be awarded compound

interest from the date of Defendants illegal activities. The United States Supreme Court has long held that a monetary award does not fully compensate an injury unless it includes an interest component. Compound interest is authorized for violations of federal law and appropriate in this case, especially as the cited federal laws and treaties and statutes are remedial and specifically designed to prohibit corrupt organizations from obtaining or retaining any benefit from violations of those laws.

## XII. DAMAGES

37. As a direct and proximate result of Defendant's breach, Plaintiffs suffered actual damages in at least the sum of $6,986,652.00, which consists of:

   a. The amounts that should have been due to Plaintiffs pursuant to the terms of the contract terms.

   b. Reasonable expenses in reliance on Defendant's performance of the contract terms.

   c. The Loss of expected net profits from proper and legitimate operation of the business enterprises.

Plaintiffs suffered additional damages, including:

   d. Damages and costs of repair and restoration of Plaintiffs' computer systems related to the "Hacking" attacks directed to them.

Plaintiffs request additional damages, including:

   e. Disgorgement of all diverted sums, profits, moveable and immoveable properties which properly should have belonged to Desyfin, S.A., but which were redirected to Defendants personally or to their affiliated entities or coconspirators for palatial properties, luxury motor vehicles, etc and which have a value of at least $10,385,867.00.

   e. Treble Damages consisting of three times plaintiffs actual damages as provided for in the RICO Act, or the sum of $20,959,957.00.

## X. FAIR ARBITRATION IMPOSSIBLE

38. The Parties' agreement contains provisions for arbitration that prevent any effective vindication of Plaintiffs' rights and complaints. The language of the provision with the problematic provisions emphasized states:

> "12.13 **Dispute Resolution.** Any dispute arising out of or relating to this Agreement including breach, termination or validity thereof **shall be resolved** in accordance with Cosa Rican laws **by arbitration in accordance with the Laws of Costa Rica of the Centro Internacional de Conciliacion Arbitraje de la Camara Costarricense Internacional de Comercio in effect on the date of this Agreement**, by three arbitrators, of whom each party will appoint one and the two designated arbitrators will appoint the third. Judgment upon the reward rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration shall be San Jose, Costa Rica and shall be conducted solely in the English language."

39. The actual effect of these provisions prevent and preclude Plaintiffs from effective use of arbitration because the cited provisions effectively limit all arbitrators to members of the Costa Rica Bar. Even without that restriction the "RICO Enterprise" and associated members of the Lacayo Beeche RICO Enterprise hold at least 118 corporate officers positions and are further known to directly and indirectly control a large number of business entities. Upon information and belief, the Lacayo Beeche RICO Enterprise influences or directly or indirectly controls at least 43 separate business entities in Costa Rica, Nicaragua, Panama and other countries. Each of those businesses employ substantial numbers of lawyers, accountants and other influential people. The actual number of associated entities is very probably higher and the influence and control of the Lacayo Beeche RICO Enterprise is intentionally through opaque and obscure means. These concealed relationships and the requirement of use of members of the Costa Rican Bar render it impossible for Plaintiffs to obtain any truly Neutral, independent and appropriate arbitrators without the arbitrators having impermissible and undiscoverable personal,

professional, business or social ties with one or more members of the Lacayo Beeche RICO Enterprise.

40. Plaintiffs are entitled to full and appropriate discovery and an opportunity to secure full disclosure of all of the financial and business activities of any and each of the Defendants and of any entities directly or indirectly related to the Lacayo Beeche RICO Enterprise in order to properly analyze and discover any impermissible relationships between or among them and any potential arbitrators drawn from the Costa Rican Bar or other lawyers and business professionals.

## XI. ATTORNEY FEES

41. As a result of Defendants illegal and impermissible actions, Plaintiffs retained counsel. Plaintiffs seek and are entitled to reimbursement of their reasonable attorney fees as authorized by federal and Texas law.

## XII.   PRAYER

42.   For these reasons, Plaintiffs ask for judgment against Defendants jointly and severally for the following:

a. $6,986,652.00 for damages resulting from Defendants breach of their contractual, legal and equitable obligations.
b. Specific performance of the terms and conditions of the parties Agreements.
c. Reasonable attorney fees.
d. Treble Plaintiffs actual damages awarded under RICO, i.e. $20,959,957.00.
e. Disgorgement of Defendants illegal revenues & profits, i.e. $10,385,867.00.
f. Prejudgment interest at the highest allowable rate.
g. Postjudgment interest at the highest allowable rate.
h. All costs of suit.
i. All other further relief the Court deems appropriate.

Respectfully Submitted,

/s/ Dorotha Ocker
Dorotha Ocker, Esq.
Richard D. Faulkner, Esq.
OCKER LAW FIRM
111 West Spring Valley Road, Suite 250
Richardson, TX 75081
Tel. 214-390-5715
Fax. 469-277-3365
Email: dmo@ockerlawfirm.com
Counsel for Plaintiffs